## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

United States of America,                    Civ. No. 18-3268 (WMW/BRT)

        Plaintiff,

v.                                           **REPORT AND**
                                             **RECOMMENDATION**

Joseph H. Yennie; Sheila A. Yennie; Nick
J. Novak; Abraham Algadi; Paul Perry;
Grant Friese; Jay Strande; Dean Weis;
Jayne Krause; Peoples State Bank of
Plainview; and City of Pine Island,

        Defendants.

---

Joseph Howard, of the Yennie Family,         Civ. No. 19-1807 (WMW/BRT)

        Plaintiff,

v.                                           **REPORT AND**
                                             **RECOMMENDATION**

Shane L. Cheever, Breena K. Effertz,
Janice Williams, Keran C. Stewart, and
Pamela J. Rogers,

        Defendants.

---

BECKY R. THORSON, United States Magistrate Judge.

       Before the Court in these two related cases are identical motions to dismiss filed

by Joseph Yennie,[1] and an additional motion to dismiss filed by Joseph Yennie. The

---

[1]     The naming difference between Defendant Joseph H. Yennie in Case No. 18-cv-3268 (WMW/BRT), and the plaintiff "Joseph Howard, of the Yennie Family" in Case No. 19-cv-1807 (WMW/BRT) has led to filings being docketed by either Mr. Yennie or

undersigned finds it most prudent to address all matters together to provide clarity to this

muddled litigation consistent with Rule 1 of the Federal Rules of Civil Procedure. This

Court recommends that the three motions be denied and that the second case, *Yennie v.*

*Cheever, et al.*, Case No. 19-cv-1807 (WMW/BRT), be consolidated into the first case,

*United States of America v. Yennie, et al.*, Case No. 18-cv-3268 (WMW/BRT).

## I.     Procedural Background

### A.     *Yennie I*

In the first lawsuit, Case No. 18-cv-3268 (hereinafter "*Yennie I*"), the United States

seeks to obtain judgment on unpaid federal income tax assessments against Joseph Yennie

and enforce federal tax liens associated with his outstanding federal tax liabilities that

attached to real property located in Pine Island, Minnesota. (*Yennie I*, Am. Compl., Doc.

No. 5). Pursuant to 26 U.S.C. § 7403(b), the United States named several other persons

and entities as defendants because they might claim an interest in the real property located

in Pine Island, Minnesota. (*Yennie I*, Am. Compl. ¶¶ 7–16).

On December 28, 2018, Joseph Yennie filed a Notice of Motion and Motion for

Dismissal, contesting jurisdiction and venue. (*Yennie I*, Doc. No. 13, at 1–2). Joseph

Yennie asserted he is not a citizen of Minnesota or the United States, and that the Internal

Revenue Service is a private corporation and therefore cannot collect taxes from him.

(*Yennie I*, Doc. No. 13, at 1–2; *Yennie I*, Doc. No. 14). Then, on January 2, 2019, Sheila

Yennie filed a Notice of Superior Claim and a Motion for Dismissal, asserting she owns

---

Mr. Howard. "Joseph H. Yennie" and "Joseph Howard, of the Yennie Family" are the
same person. The Court refers to this person solely as Joseph Yennie to avoid confusion.

the full interest in the Pine Island property and thus the IRS cannot enforce Joseph

Yennie's tax liabilities against it. (*Yennie I*, Doc. No. 18, at 1–2). On March 25, 2019,

Sheila Yennie filed a second Notice of Superior Claim and a Motion for Dismissal, but

specified the motion was brought under Federal Rule of Civil Procedure 12(b)(6).

(*Yennie I*, Doc. No. 42). Her arguments mirrored her initial motion. (*Yennie I*, Doc. No.

42, at 1–2).

   The Court issued a Report and Recommendation rejecting the Yennies'

arguments. *Yennie I*, 2019 WL 3325862, at *1 (D. Minn. Apr. 30, 2019).[2] The Court

found both subject matter and personal jurisdiction over Joseph Yennie, venue to be

appropriate in this District, the Government to have stated a claim upon which relief can

be granted, and summarily rejected Joseph Yennie's Sovereign Citizen allegations.[3] *Id.* at

---

[2]    Also available at *Yennie I*, Doc. No. 43.

[3]    As explained by the Federal Bureau of Investigation ("FBI"), the "Sovereign Citizens" movement is based on a theory where they view the "USG [U.S. Government] as bankrupt and without tangible assets; therefore, the USG is believed to use citizens to back U.S. currency. Sovereign citizens believe the USG operates solely on a credit system using American citizens as collateral." *El v. AmeriCredit Fin. Servs., Inc.*, 710 F.3d 748, 750 (7th Cir. 2013) (citation omitted); *see also Cooper v. United States*, 104 Fed. Cl. 306, 313–314 (2012) (explaining that "an individual who identifies with the Sovereign Citizen Movement considers himself to be his own sovereign, not a United States citizen, and therefore 'believe[s] that [he is] not subject to government authority.' *Gravatt v. United States*, 100 Fed. Cl. 279, 282 (2011). Members of this movement think that [t]he federal government . . . has tricked the populace into becoming U.S. citizens by entering into 'contracts' embodied in such documents as birth certificates and social security cards. With these contracts, an individual unwittingly creates a fictitious entity (i.e., the U.S. citizen) that represents, but is separate from, the real person. Through these contracts, individuals also unknowingly pledge themselves and their property, through their newly created fictitious entities, as security for the national debt in exchange for the benefits of citizenship."); *Sochia v. Federal–Republic's Cent. Gov't*, 2006 WL 3372509,

*2–*4. In looking at Sheila Yennie's motion, the Court found it should be denied under

both Rule 12(b)(6) and Rule 56. *Id.* at *4. The District Court overruled the Yennies'

objections and adopted the R&R's findings. *Yennie I*, 2019 WL 3325439, at *1 (D. Minn.

July 24, 2019).[4]

### B.    *Yennie II*

While the R&R in *Yennie I* was pending, Joseph Yennie filed a second lawsuit,

Case No. 19-cv-1807 (hereinafter "*Yennie II*"), wherein he asserts: (1) service errors in

*Yennie I*; (2) errors relating to Form 1040 and Form 1099 filings in calculating the federal

tax liabilities at issue in *Yennie I*; (3) a conspiracy to deprive him of his private property

through *Yennie I*; and (4) slander from initiating *Yennie I*. (*Yennie II*, Compl., at 1, Doc.

No. 1). On the first claim, Joseph Yennie demands "proof of properly delegated authority

form the Secretary of Treasury and the Attorneys General." (*Yennie II*, Compl., at 2). For

the second claim (and weaved into all his other claims), Joseph Yennie espouses

arguments typical of Sovereign Citizens—that the corporate version of "JOSEPH H.

YENNIE" dispersed income to the living man version of "Joseph Howard; of the Yennie

Family." (*Yennie II*, Compl., at 3–4). After several pages of this argument, Joseph Yennie

requests a determination that he has no tax liabilities to the United States and has

complied with IRS filing requirements. (*Yennie II*, Compl., at 6). For the errors in Counts

---

at *5 (W.D. Tex. Nov. 20, 2006) (collecting cases and describing plaintiff's "sovereign citizen" theories as "frivolous" and "rejected by every federal court that has considered them").

[4]    Also available at *Yennie I*, Doc. No. 50.

1 and 2, Joseph Yennie asserts Defendants have conspired to defraud him of his property. (*Yennie II*, Compl., at 6). Finally, Joseph Yennie asserts Defendants have slandered his name by serving other persons with *Yennie I*. (*Yennie II*, Compl., at 7). Joseph Yennie seeks $207,683 in damages—the exact amount of back taxes the United States is seeking in *Yennie I*. (*Compare Yennie II*, Compl., at 7, *with Yennie I*, Doc. No. 5, at 6).

### C.    Motions Filed in *Yennie I* and *Yennie II*

Three weeks after filing the complaint in *Yennie II*, Joseph Yennie filed a motion to dismiss. (*Yennie II*, Mot., Doc. No. 4). Joseph Yennie filed the exact same motion in *Yennie I*. (*Yennie I*, Mot., Doc. No. 53). The motion expressly indicates it is a "<u>motion to</u> <u>dismiss</u> the Case No. 0:18-cv-3268 for lack of <u>subject matter</u> personam, and <u>venue</u>." (*Yennie II*, Mot., at 1 (emphasis in original); *Yennie I*, Mot., at 1 (emphasis in original)).

Joseph Yennie then sought default judgment against the defendants of *Yennie II*, asserting they did not respond to his countersuit. (*Yennie II*, Doc. No. 10). The United States, on behalf of Defendants, opposed the application for entry of default. (*Yennie II*, Doc. No. 12). The United States asserted that it is the proper defendant and Yennie has not served it in accordance with the Federal Rules of Civil Procedure. (*Yennie II*, Doc. No. 12).[5] Joseph Yennie's application for default was denied. (*Yennie II*, Doc. No. 13).

---

[5]     Joseph Yennie asserts he is suing the defendants in *Yennie II* in their individual capacity. (*Yennie II*, Compl., at 1). He also notes that "defendants have attempted to collect an excise tax," "have made assessments," and have initiated a lawsuit against him. (*E.g.*, *Yennie II*, Compl., at 1–4). It is well settled that individual federal employees may not be sued for actions taken in the performance of their official duties. *See Searcy v. Donelson*, 204 F.3d 797, 798 (8th Cir. 2000) (collecting cases); *In re Broos*, 534 B.R. 358, 360 (B.A.P. 8th Cir. 2015) (rejecting a Sovereign Citizen's attempt to sue individual IRS agents for actions done in furtherance of their official duties).

Thereafter, Joseph Yennie disputed the United States' assertions in its response and made various arguments as to his tax liabilities. (*Yennie II*, Doc. No. 14). Joseph Yennie simultaneously filed a memorandum arguing that default must be entered. (*Yennie II*, Doc. No. 15). Finally, Joseph Yennie again asserted that the defendants defaulted his lawsuit. (*Yennie II*, Doc. No. 19).

Meanwhile, in the *Yennie I* lawsuit, Joseph Yennie filed another motion to dismiss. (*Yennie I*, Doc. No. 58). Joseph Yennie asserts that he was served with the amended complaint, but not the original complaint, rendering service invalid. (*Yennie I*, Doc. No. 58, at 1).

## II.   Analysis

### A.    The Service Motion in *Yennie I*

As noted, Joseph Yennie seeks dismissal of *Yennie I* on the grounds that he and Sheila Yennie were only served the amended complaint, rather than the original complaint. (*Yennie I*, Doc. No. 58, at 1). Joseph Yennie argues that no amendment to a document can take place without an original document, so by failing to serve the original complaint on him and Sheila Yennie, the amended complaint that was served on them is invalid *ab initio*. (*Yennie I*, DOC.  No. 58, at 2). Joseph Yennie continues, asserting the original complaint does not exist and if it does, it constituted *ex parte* communications with the Court because he was never served it. (*Yennie I*, Doc. No. 58, at 2).

Joseph Yennie's motion is best interpreted as a motion challenging insufficient service of process under Rule 12(b)(5). As discussed above, Joseph Yennie has already raised defenses of lack of subject matter and personal jurisdiction, inappropriate venue,

6

and failure to state a claim, arguments contemplated by Rules 12(b)(1), (2), (3), and (6),

respectively. Those arguments were flatly rejected by the Court. Under Rule 12(g)(2), a

party that raises certain Rule 12 defenses by motion "must not make another motion

under this rule raising a defense or objection that was available to the party but omitted

from its earlier motion." Failure to raise the defense of insufficient service of process

under Rule 12(b)(5) when raising other Rule 12 defenses waives that defense from being

asserted in the future. Fed. R. Civ. P. 12(h)(1); *see Pope v. Elabo GmbH*, 588 F. Supp. 2d

1008, 1013 n.5 (D. Minn. 2008) (noting that a lack of personal jurisdiction defense is

waived if not filed in an earlier-filed Rule 12 motion). Accordingly, Joseph Yennie's

motion must be denied.

Even if the Court considered Joseph Yennie's arguments as to insufficient process,

they lack merit. The United States filed its original complaint on November 28, 2018.

(*Yennie I*, Doc. No. No. 1). It then filed the amended complaint on December 11, 2018,

(*Yennie I*, Doc. No. 5), before any defendant had answered or otherwise responded to the

original complaint. The United States was well within its right to amend its pleading as a

matter of course. Fed. R. Civ. P. 15(a)(1). There was no obligation for the United States

to serve an inoperative pleading on Joseph Yennie or any other defendant.

The original complaint was not an *ex parte* communication. It was filed publicly

and Joseph Yennie, as a litigant and member of the public, has access to the Court's

docket.

And finally, Joseph Yennie, as a *pro se* party, cannot assert arguments on behalf of

any other persons. *United States v. Johnson*, Case No. 16-cr-193 (WMW/BRT), 2019

7

WL 913161, at *4 (D. Minn. Feb. 25, 2019) (citing RESTATEMENT (THIRD) OF THE LAW

GOVERNING LAWYERS § 4(d) (2000) ("In general . . . a person appearing pro se cannot

represent any other person or entity, no matter how close the degree of kinship,

ownership, or other relationship.")). This means that Joseph Yennie cannot assert any

claims on behalf of Sheila Yennie. To the extent that Joseph Yennie's motion claims the

lawsuit should be dismissed for insufficient process on Sheila Yennie, it should be

denied. Likewise, for the reasons stated already, it should be denied because Sheila

Yennie has already brought previous Rule 12 motions and the motion lacks merit.

Therefore, this Court recommends that Joseph Yennie's service motion be denied.

### B.     The Twice-Filed Motion to Dismiss

Joseph Yennie filed a motion to dismiss in both *Yennie I* and *Yennie II*. These

motions are identical. The motion expressly indicates it is a "motion to dismiss the Case

No. 0:18-cv-3268 for lack of subject matter personam, and venue." (*Yennie II*, Mot., at 1

(emphasis in original); *Yennie I*, Mot., at 1 (emphasis in original)).

First, it cannot be considered as a motion for voluntary dismissal of *Yennie II*

because Joseph Yennie seeks dismissal of the United States' claims, not his own. The

United States has no claims in *Yennie II*, only *Yennie I*. A party may not use a motion in

one case to defeat the claims in another. Because the motion is clearly aimed at *Yennie I*,

it should be denied as to *Yennie II*.

As for *Yennie I*, the Court has already rejected Joseph Yennie's arguments as to

lack of subject matter jurisdiction and improper venue. Further, the motion appears to be

a cut-and-paste memorandum of various Sovereign Citizen arguments that challenge the

authority of the IRS to collect taxes from anyone not residing in the District of Columbia.

As Joseph Yennie has already been warned, such Sovereign Citizen arguments have been

repeatedly and soundly rejected by all courts that consider them, and therefore, require no

analysis. *See, e.g.*, *United States v. Jonassen*, 759 F.3d 653, 657 n.2 (7th Cir. 2014)

(providing that Sovereign Citizen arguments can take many titles, but at their core "assert

that the federal government is illegitimate and insist that they are not subject to its

jurisdiction. The defense has no conceivable validity in American law." (quoting *United

States v. Schneider*, 910 F.2d 1569, 1570 (7th Cir. 1990))); *United States v, Sileven*, 985

F.2d 962, 970 (8th Cir. 1993) (finding similar arguments that defendant was not a federal

citizen "plainly frivolous" and noting that further discussion was unnecessary). It would

be a waste of the Court's resources and an exercise in futility to further engage Joseph

Yennie's Sovereign Citizen arguments.

Additionally, Joseph Yennie has already made a Rule 12 motion and is thus barred

from raising further challenges to venue. Fed. R. Civ. P. 12(h)(1).

As such, this Court recommends that Joseph Yennie's twice-filed motion to

dismiss be denied as to *Yennie I*.

### C.    Consolidation of *Yennie I* and *Yennie II*

The Court has an "inherent power to manage and control its docket." *Cottrell v.

Duke*, 737 F.3d 1238, 1248 (8th Cir. 2013); *cf. Chambers v. NASCO, Inc.*, 501 U.S. 32,

44–45 (1991) (describing a court's inherent power to fashion sanctions for conduct

abusing the judicial process). And under Rule 42(a)(2), the Court may consolidate

lawsuits that share a common question of law and fact. This includes issuing orders that avoid unnecessary cost or delay. Fed. R. Civ. P. 42(a)(3).

*Yennie II* is clearly a responsive action to *Yennie I*. *Yennie II* challenges service errors in *Yennie I*. *Yennie II* challenges how federal taxes were calculated in *Yennie I*. *Yennie II* asserts a conspiracy to deprive Joseph Yennie of his private property via *Yennie I*. And *Yennie II* asserts that *Yennie I* slandered Joseph Yennie. For damages, *Yennie II* seeks an amount equal to that sought in *Yennie I*. Regardless of the merit of Joseph Yennie's claims in *Yennie II*, they are all responsive to *Yennie I* and should be considered therein rather than in a separate lawsuit.

It would be an unnecessary waste of judicial resources for the Court to manage two separate litigations related to a single dispute. While the Court has expressed its view as to the merit of Joseph Yennie's Sovereign Citizen arguments, there is no reason for those arguments to be litigated in an action separate from the United States' tax enforcement action. By consolidating *Yennie I* and *Yennie II*, the Court and the parties conserve resources by avoiding duplicitous arguments, the possibility for conflicting decisions is lessened, and the likelihood of a fulsome and final decision is increased. To continue *Yennie II* on a separate, parallel track to *Yennie I* would be a misuse of the judicial process bordering on frivolous and malicious. Thus, this Court recommends that *Yennie II* be consolidated into *Yennie I*.

To give greatest effect to this consolidation and given his framing of *Yennie II* as a countersuit to *Yennie I*, Joseph Yennie's complaint from *Yennie II* should be docketed as an answer and counterclaim in *Yennie I*. By treating this as Joseph Yennie's answer,

*Yennie I* can move forward instead of being stymied by procedural and service-related

quagmire. This Court finds no other documents from *Yennie II* need be re-docketed in

*Yennie I*. After consolidation, *Yennie II* should be administratively closed.

### III.    Recommendation

Based on all the files, records, and proceedings herein, **IT IS HEREBY**

**RECOMMENDED** as follows:

1.    Joseph Yennie's Motion for Dismissal, (*Yennie I*, Doc. No. 58), be

**DENIED**;

2.    Joseph Yennie's Motion for Dismissal, (*Yennie I*, Doc. No. 53), be

**DENIED**;

3.    Joseph Yennie's Motion for Dismissal, (*Yennie II*, Doc. No. 4), be

**DENIED**;

4.    That *Yennie I*, Case No. 18-cv-3268 (WMW/BRT), and *Yennie II*, Case No.

19-cv-1807 (WMW/BRT), be **CONSOLIDATED**. The consolidation should be

implemented as follows:

      a.    The complaint in *Yennie II* (Doc. No. 1) should be docketed as
            Joseph Yennie's answer and counterclaim in *Yennie I*; and

      b.    *Yennie II* be administratively closed.


Date: December 20, 2019            *s/ Becky R. Thorson*
                                    BECKY R. THORSON
                                    U.S. Magistrate Judge

11

## NOTICE

**Filings Objections:** This Report and Recommendation is not an order or judgement of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).