UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Case No. 18-cv-3268 (WMW/ECW) |
| Plaintiff, | |
| v. | **ORDER** |
| Joseph H. Yennie, Sheila A. Yennie, Nick J. Novak, Abraham Algadi, Paul Perry, Grant Friese, Jay Strande, Dean Weis, Jayne Krause, People's State Bank of Plainview and City of Pine Island, | |
| Defendants. | |

This matter is before the Court on Plaintiff United States of America's motion for summary judgment. (Dkt. 150.) Defendants Joseph H. Yennie and Sheila A. Yennie (Yennie Defendants) have not responded to the United States's motion but instead have filed several notices and affidavits, and Sheila Yennie moves for sanctions against the United States. (Dkt. 161.) For the reasons addressed below, the United States's motion for summary judgment is granted and Sheila Yennie's motion for sanctions is denied.

## BACKGROUND

The United States commenced this action on November 28, 2018, and filed the now-operative amended complaint on December 11, 2018. In Count I, the United States seeks to reduce to a judgment federal income tax assessments made against Joseph Yennie for tax years 2005 through 2013. In Count II, the United States seeks a judgment enforcing tax liens against real property located in Pine Island, Minnesota (Pine Island

Property). Count II of the amended complaint also seeks a judgment against Sheila Yennie pursuant to 26 U.S.C. § 7403(b) because she might claim an interest in the proceeds arising from the sale of the Pine Island Property.[1]

In a February 15, 2022 Order, this Court denied without prejudice the United States's motion for default judgment or, in the alternative, summary judgment against the Yennie Defendants. In doing so, the Court observed that the United States and the Yennie Defendants had provided contradictory accounts of who owns the Pine Island Property. The United States alleged that the Yennie Defendants co-own the Pine Island Property, with Joseph Yennie and Sheila Yennie each owning 50 percent thereof. Sheila Yennie, however, contended that she owns 100 percent of the Pine Island Property. According to Sheila Yennie, she gained ownership of 50 percent of the Pine Island Property during her marriage to Joseph Yennie and obtained ownership of the remaining 50 percent of the Pine Island Property in 2006 by means of a quitclaim deed following her divorce from Joseph Yennie. The Court observed that the United States had filed with the Court a 2006 quitclaim deed but had not established that Sheila Yennie did not already own 50 percent of the Pine Island Property when the deed was executed, which

---

[1] Count II of the amended complaint also seeks a judgment against Defendants Nick J. Novak, Abraham Algadi, Paul Perry, Grant Friese, Jay Strande, Dean Weis, Jayne Krause, Peoples State Bank of Plainview and City of Pine Island pursuant to 26 U.S.C. § 7403, because these individuals or entities also might claim an interest in the proceeds arising from the sale of the Pine Island Property. Novak previously disclaimed an interest in the Pine Island Property; the Court previously dismissed the United States's claim against Peoples State Bank of Plainview pursuant to a stipulation filed by those parties; and the Court entered default judgment against Algadi, Perry, Friese, Strande, Weise, Krause and Pine Island. As such, only the United States's claims against the Yennie Defendants remain unresolved.

would have resulted in Sheila Yennie owning 100 percent of the Pine Island Property. Because the United States had not provided any legal authority establishing that it could satisfy the debt of a delinquent taxpayer through the sale of an asset wholly owned by a nondelinquent spouse, the Court denied the United States's motion without prejudice.

The United States now renews its motion for summary judgment. As to Count I, the United States seeks entry of a money judgment of $189,464.01 against Joseph Yennie for his assessed, but unpaid, income tax liabilities. As to Count II, the United States seeks a judgment enforcing its federal tax liens against the Pine Island Property. According to the United States, the record demonstrates that Joseph Yennie owns a 50 percent interest in the Pine Island Property and, because there is no genuine dispute of material fact as to this issue, the Pine Island Property may be sold in satisfaction of Joseph Yennie's tax liability. The Yennie Defendants have not meaningfully responded to the United States's motion.[2] Sheila Yennie cross-moves for sanctions against the United States, however.

## ANALYSIS

I.  **Motion for Summary Judgment**

Summary judgment is proper when the record before the district court establishes that there is "no genuine dispute as to any material fact" and the moving party is "entitled

---

[2] The Yennie Defendants filed several notices and affidavits after the United States filed its motion for summary judgment. Many of these filings are procedurally untimely, and all of these filings are substantively meritless and consistent with a sovereign-citizen ideology. *See Waters v. Madson*, 921 F.3d 725, 732 n.4 (8th Cir. 2019) (describing sovereign citizens as a loose affiliation of people "who believe government in the United States operates illegitimately and outside the bounds of its jurisdiction"). As such, the United States's motion for summary judgment is effectively unopposed.

to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A genuine dispute as to a material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When deciding a motion for summary judgment, a district court construes the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in the nonmoving party's favor.  *See Windstream Corp. v. Da Gragnano*, 757 F.3d 798, 802–03 (8th Cir. 2014).  When asserting that a fact is genuinely disputed, the nonmoving party must "submit affidavits, depositions, answers to interrogatories, or admissions on file and designate specific facts" in support of the asserted factual dispute.  *Gander Mountain Co. v. Cabela's, Inc.*, 540 F.3d 827, 831–32 (8th Cir. 2008); *see also* Fed. R. Civ. P. 56(c)(1)(A).  A nonmoving party may not "rest on mere allegations or denials but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995) (internal quotation marks omitted).  The Court addresses, in turn, the claims advanced by the United States.

### A.    Federal Income Tax Liabilities (Count I)

Count I of the amended complaint alleges that Joseph Yennie is liable for unpaid federal income taxes for tax years 2005 through 2013, plus interest and penalties.  To prove Joseph Yennie's federal income tax liabilities, the United States relies on the Internal Revenue Service's (IRS) tax assessments against him.

A tax assessment, which is "an IRS determination that a taxpayer owes the Federal Government a certain amount of unpaid taxes," is "entitled to a legal presumption of correctness."  *United States v. Fior D'Italia, Inc.*, 536 U.S. 238, 242 (2002); *accord*

*David E. Watson, P.C. v. United States*, 668 F.3d 1008, 1016 (8th Cir. 2012).  In a civil tax-deficiency case, the taxpayer bears the burden of disproving the government's tax assessment by a preponderance of the evidence.  *See Mattingly v. United States*, 924 F.2d 785, 787 (8th Cir. 1991); *Ledbetter v. Comm'r*, 837 F.2d 708, 711 (5th Cir. 1988).  The "legal presumption of correctness" for IRS assessments includes "reasonable" methods employed by the IRS to estimate tax liability.  *Fior D'Italia*, 536 U.S. at 242; *accord Page v. Comm'r*, 58 F.3d 1342, 1347–48 (8th Cir. 1995) (holding that the "bank-deposits-plus-cash-expenditures method is a rational way to reconstruct income"); *Caulfield v. Comm'r*, 33 F.3d 991, 993 (8th Cir. 1994) (observing that an "assessment is expected to be rational, not flawless" (internal quotation marks omitted)).  To prove tax assessment amounts, the United States may rely on certified copies of the IRS Certificate of Assessments, Payments, and Other Specified Matters.  *See United States v. Gerads*, 999 F.2d 1255, 1256 (8th Cir. 1993); *see also March v. Internal Revenue Serv.*, 335 F.3d 1186, 1188 (10th Cir. 2003).

In support of its motion for summary judgment, the United States relies on the declaration of IRS Advisor Michael Stepka and IRS records pertaining to Joseph Yennie, including Joseph Yennie's income tax returns and certified copies of IRS Form 4340 Certificate of Assessments, Payments, and Other Specified Matters (Form 4340) for tax years 2005 through 2013.  Stepka attests that, based on these records and Joseph Yennie's bank account statements, the IRS conducted a bank-deposit analysis to determine that Joseph Yennie earned self-employment income during tax years 2005 through 2013.  Based on this analysis, the IRS assessed Joseph Yennie's tax liabilities as follows:

| Tax Year | Assessment Date | Tax Assessed |
|---|---|---|
| 2005 | February 25, 2008 | $14,083.00 |
| 2006 | July 11, 2016 | $9,237.00 |
| 2007 | July 8, 2016 | $7,746.00 |
| 2008 | July 8, 2016 | $17,537.00 |
| 2009 | July 11, 2016 | $3,270.00 |
| 2010 | July 11, 2016 | $4,487.00 |
| 2011 | July 11, 2016 | $15,805.00 |
| 2012 | July 11, 2016 | $10,118.00 |
| 2013 | July 11, 2016 | $1,976.00 |

Joseph Yennie has not meaningfully disputed these amounts or identified evidence to the contrary. The United States is entitled to summary judgment as to these amounts.

In addition to the foregoing tax assessments, the IRS assessed statutory interest and penalties against Joseph Yennie. Interest and other statutory additions continue to accrue until payment of a tax assessment. *See* 26 U.S.C. §§ 6601(a), 6651(a). A taxpayer's burden to disprove an assessment extends to certain statutory additions. *See Ledbetter*, 837 F.2d at 711.

The United States assessed statutory civil non-fraud penalties against Joseph Yennie under 26 U.S.C. § 6651(a)(1)–(2) for failing to file a tax return for tax years 2010 and 2013 and failing to pay taxes due for tax years 2010 through 2013.[3] These penalties increased the tax assessments for tax years 2010 through 2013 by 25 percent. Joseph Yennie has not meaningfully disputed these penalties or identified evidence to the contrary. The United States is entitled to summary judgment as to these penalties.

---

[3] The United States does not seek penalties under Section 6651(a) for tax years 2005 through 2009. The United States concedes that the penalties for those tax years were discharged as part of Joseph Yennie's bankruptcy proceedings because they pertain to an event that occurred more than three years before Joseph Yennie filed his bankruptcy petition. *See* 11 U.S.C. § 523(a)(7)(B).

The United States also assessed statutory civil fraud penalties against Joseph Yennie under 26 U.S.C. §§ 6651(f) and 6663(a) for tax years 2010 through 2013. Under Section 6651(f), a penalty equivalent to 75 percent of the underpayment is imposed if any "failure to file any return is fraudulent." 26 U.S.C. §. 6651(f). And under Section 6663(a), a penalty equivalent to 75 percent of the tax due is imposed if "any part of any underpayment of tax required to be shown on a return is due to fraud." 26 U.S.C. § 6663(a). The United States must prove a taxpayer's fraud by clear-and-convincing evidence. *McGraw v. Comm'r*, 384 F.3d 965, 970 (8th Cir. 2004). "Because fraudulent intent is rarely established by direct evidence, it may be established through circumstantial evidence." *Id.* at 971. Evidence of "a consistent pattern of sizeable underreporting of income, inadequate records, and unsatisfactory explanations for such underreporting . . . can establish fraud." *Id.* A taxpayer's failure to cooperate with tax authorities also may demonstrate fraud. *Id.*

The record demonstrates that Joseph Yennie refused to file tax returns for tax years 2005, 2010 and 2013 and that he filed false tax returns, signed under the penalty of perjury, for tax years 2006, 2007, 2008, 2009, 2011 and 2012, in which he claimed $0 in income and tax due despite earning income in each of those years. Moreover, the record reflects that Joseph Yennie has refused to cooperate with tax authorities. Joseph Yennie has neither disputed these facts nor identified any evidence to the contrary. On this record, the United States has established by clear-and-convincing evidence that Joseph Yennie is subject to statutory civil fraud penalties of 75 percent for tax years 2010

7

through 2013 under 26 U.S.C. §§ 6651(f) and 6663(a). As such, the United States is entitled to summary judgment as to these penalties.

Finally, the United States seeks statutory interest for tax years 2005 through 2013. A delinquent taxpayer must pay interest on the overdue tax amount through the date that the tax liability is paid. *See* 26 U.S.C. § 6601(a). The amount of interest owed on delinquent tax liability "is a matter of law, not of evidence" and "is not something the government must prove." *United States v. Schroeder*, 900 F.2d 1144, 1150 n.5 (7th Cir. 1990). Moreover, it "is well established that the IRS's tax calculations (including calculations of interest and penalties) are presumptively valid." *United States v. Sweeny*, 418 F. Supp. 2d 492, 496 (S.D.N.Y. 2006) (internal quotation marks omitted). Here, the United States relies on evidence that the IRS has calculated Joseph Yennie's tax liability, including statutory interest and penalties through March 11, 2022, to equal $189,464.01. Joseph Yennie has not meaningfully disputed this calculation or identified evidence to the contrary. As such, the United States is entitled to summary judgment as to the IRS's statutory interest calculation.

Accordingly, the Court grants the United States's motion for summary judgment against Joseph Yennie as to Count I of the amended complaint in the amount of $189,464.01, plus statutory interest and penalties accruing after March 11, 2022.

### B. Federal Tax Liens and Sale of Property (Count II)

Count II of the amended complaint seeks a declaration that there are valid and subsisting federal tax liens on the Pine Island Property and that the United States may enforce those liens to satisfy the judgment on Count I.

If a taxpayer fails to pay assessed tax liabilities, a tax lien attaches on all of the taxpayer's property. *See Pagonis v. United States*, 575 F.3d 809, 812 (8th Cir. 2009) (citing 26 U.S.C. § 6321). Although federal tax liens arise and attach at the time of the assessment, federal tax liens are not self-executing. *See United States v. Nat'l Bank of Com.*, 472 U.S. 713, 719–20 (1985). Rather, the United States must enforce the lien through a civil action. *See* 26 U.S.C. § 7403.

The record reflects that Joseph Yennie acquired the Pine Island Property by deed dated April 10, 2000. Pursuant to an April 24, 2002 judgment for dissolution of marriage, Goodhue County District Court, First Judicial District, ordered the Pine Island Property to be sold to satisfy certain enumerated debts, with any remaining proceeds of the sale to "be split equally between" Joseph Yennie and Sheila Yennie. Subsequently, Joseph Yennie transferred "one-half undivided interest" in the Pine Island Property to Sheila Yennie via quitclaim deed, recorded on October 2, 2006.[4] As such, Joseph Yennie retained a 50 percent interest in the Pine Island Property when the IRS assessed federal income tax liabilities against Joseph Yennie for tax years 2005 through 2013. Because Joseph Yennie failed to pay these tax liabilities after receiving notice and demand for payment, federal tax liens arose on the dates of the tax assessments and attached to all of his property and rights to property. *See* 26 U.S.C. §§ 6321, 6322; *Drye v. United States*, 528 U.S. 49, 53 (1999); *Nat'l Bank of Com.*, 472 U.S. at 719–20. Joseph Yennie has not meaningfully disputed these facts or identified any evidence to the contrary. As such, the

---

[4] The record is unclear as to why the Pine Island Property was not sold as contemplated by the April 24, 2002 judgment for dissolution of marriage.

United States is entitled to summary judgment against Joseph Yennie as to Count II of the amended complaint.

The United States also seeks judgment on Count II against Sheila Yennie pursuant to 26 U.S.C. § 7403(b) because she might claim an interest in the proceeds arising from the sale of the Pine Island Property. The United States served copies of the summons and amended complaint on Sheila Yennie, to which she responded by filing three successive motions to dismiss. The Court denied each motion, the last of which was denied in a January 19, 2021 Order. Consequently, Sheila Yennie's deadline to answer the amended complaint was February 2, 2021. *See* Fed. R. Civ. P. 12(a)(4)(A) (providing that a defendant must file a responsive pleading within 14 days after the denial of a motion to dismiss). To date, Sheila Yennie has not filed an answer to the amended complaint.

An allegation is deemed "admitted if a responsive pleading is required and the allegation is not denied." Fed. R. Civ. P. 8(b)(6). Because Sheila Yennie failed to answer the amended complaint, the allegations in the amended complaint are admitted. Moreover, when opposing a motion for summary judgment, the nonmoving party must "submit affidavits, depositions, answers to interrogatories, or admissions on file and designate specific facts" in support of the asserted factual dispute. *Gander Mountain Co.*, 540 F.3d at 831–32; *see also* Fed. R. Civ. P. 56(c)(1)(A). A nonmoving party may not "rest on mere allegations or denials but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." *Krenik*, 47 F.3d at 957 (internal quotation marks omitted). Here, Sheila Yennie has not meaningfully responded to the United States's motion for summary judgment as to Count II, nor has she identified any

10

evidence demonstrating the existence of a genuine dispute of material fact. For these reasons, the United States is entitled to summary judgment against Sheila Yennie as to Count II of the amended complaint.

Finally, the United States seeks a court-ordered sale of the Pine Island Property. The Internal Revenue Code authorizes the United States to file a civil lawsuit to enforce its liens and recover payment of any unpaid tax liability. 26 U.S.C. § 7403(a). In addition, "in all cases [in which] a claim or interest of the United States therein is established," a district court "may decree a sale of such property . . . and a distribution of the proceeds of such sale according to the findings of the court in respect to the interests of the parties and of the United States." 26 U.S.C. § 7403(c). A district court "may exercise a degree of equitable discretion in § 7403 proceedings" by considering "both the Government's interest in prompt and certain collection of delinquent taxes and the possibility that innocent third parties will be unduly harmed by that effort." *United States v. Rodgers*, 461 U.S. 677, 709 (1983).

Section 7403 authorizes a court to order the sale of a property co-owned by a delinquent taxpayer and a non-delinquent third party, subject to the court's equitable discretion. *Id.* at 680; *see also United States v. Bierbrauer*, 936 F.2d 373, 375–77 (8th Cir. 1991) (reversing district court's refusal to order sale of property co-owned by a non-delinquent spouse). When deciding whether to order the sale of a property when a non-delinquent third party holds an interest in the property, courts should consider four factors: first, whether the government's financial interests would be prejudiced if the government were limited to a forced sale of the delinquent taxpayer's partial interest in the property;

11

second, whether the non-delinquent third party has a legally recognized expectation that her property interest would not be subject to a forced sale; third, the possibility that the third party will be undercompensated or incur dislocation costs; and fourth, the character and value of the respective interests in the property.  *See Rodgers*, 461 U.S. at 709–11.

Here, the first factor weighs in favor of sale because Joseph Yennie's 50 percent undivided interest in the Pine Island Property cannot be sold separately.  *See Bierbrauer*, 936 F.2d at 376.  The second factor also weighs in favor of sale because nothing in the record demonstrates that Sheila Yennie has a legitimate legally recognized expectation that the Pine Island Property could not be sold.  To the contrary, the record reflects that both Joseph Yennie *and* Sheila Yennie have acted to frustrate the government's tax-collection efforts, including persistent refusals to participate in discovery in this case.  *See id.* (observing that the second *Rodgers* factor favored sale when non-delinquent spouse "acted with her husband in such a way as to frustrate the government's tax-collection efforts").  The third factor, which pertains to the possibility of inadequate compensation or dislocation costs, also favors sale.  The United States concedes that Sheila Yennie should recover a portion of the proceeds of the sale of the Pine Island Property proportionate to her 50 percent interest in the Pine Island Property.  And Sheila Yennie has identified no evidence demonstrating that she will be undercompensated or incur unusual dislocation costs.  *See id.* (holding that "this third factor envisions some special circumstance of prejudice to the non-liable third party").  As for the fourth factor, the record reflects that Sheila Yennie and Joseph Yennie have equivalent relative

interests in the Pine Island Property.  As such, all of the relevant factors weigh in favor of ordering the sale of the Pine Island Property.

The Court, therefore, grants the United States's motion for summary judgment against Joseph Yennie and Sheila Yennie as to Count II of the amended complaint.

**II.     Sheila Yennie's Motion for Sanctions**

Sheila Yennie has not responded to the United States's motion for summary judgment.  Sheila Yennie, however, cross-moves for sanctions against the United States, including dismissal of the United States's claims with prejudice.  Sheila Yennie's motion identifies no legal authority or evidentiary support for the relief she seeks.  She primarily alleges that counsel for the United States has harassed her by continuing to litigate this case against her, an allegation that appears to be based on her mistaken interpretation of this Court's prior orders.  Moreover, Sheila Yennie presents no evidence to support her allegations of harassment.  Accordingly, Sheila Yennie's motion for sanctions is denied.

**ORDER**

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED**:

1.     Plaintiff United States of America's motion for summary judgment, (Dkt. 150), is **GRANTED**.

2.     As to Count I of the amended complaint, summary judgment is entered in favor of Plaintiff United States of America and against Defendant Joseph H. Yennie for the unpaid balance of his federal income taxes, interest and penalties for tax years 2005

through 2013, in the amount of $189,464.01, plus statutory interest and penalties accruing after March 11, 2022.

3. As to Count II of the amended complaint, summary judgment is entered in favor of Plaintiff United States of America and against Defendants Joseph H. Yennie and Sheila A. Yennie as follows:

a. Pursuant to 26 U.S.C. §§ 6321 and 6322, the United States has valid and subsisting liens that attached to all property and rights to property of Joseph H. Yennie, including the real property legally described as: Lot Twenty-two (22), Block One (1) of Pine Tree Valley Fourth Subdivision, Pine Island, Minnesota, according to the plat thereof on file and of record in the office of the County Recorder for Goodhue County, State of Minnesota (Pine Island Property);

b. The federal tax liens are enforced against the Pine Island Property, and the Pine Island Property shall be sold pursuant to a separate order of this Court on a motion by the United States; and

c. The United States shall file a motion and proposed order for sale within 30 days after the date of this Order.

4. Defendant Sheila A. Yennie's motion for sanctions, (Dkt. 161), is **DENIED**.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: November 10, 2022                    s/Wilhelmina M. Wright
                                            Wilhelmina M. Wright
                                            United States District Judge